# COHEN MILSTEIN

Laura Posner<br>
(212) 220-2925<br>
lposner@cohenmilstein.com

January 18, 2024

**<u>Via ECF</u>**

Honorable Dale E. Ho
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    **<u>*Phunware, Inc. v. UBS Securities LLC*, No. 1:23-cv-06426</u>**

Dear Judge Ho:

    Plaintiff Phunware, Inc. ("Phunware" or "Plaintiff") respectfully submits this Notice of Supplemental Authority regarding the recent Report & Recommendation by Magistrate Judge Stein, dated December 29, 2023, in *Northwest Biotherapeutics, Inc. v. Canaccord Genuity LLC, et al.*, No. 1:22-cv-10185-GHW-GS (S.D.N.Y.) (the "R&R," attached as Exhibit A), which supports the denial of Defendant's motion to dismiss in this action. The R&R was issued after Phunware filed its Opposition to Defendant's Motion to Dismiss (ECF 25), and UBS's reply brief (ECF 26) buries the R&R only in footnotes, despite its direct applicability to each of the key issues raised in its motion to dismiss.[1]

    The allegations concerning market manipulation and spoofing in *Northwest Biotherapeutics* are nearly identical to the complaint here. Both complaints allege that broker-dealers engaged in market manipulation by illegally spoofing down the price of the plaintiff's stock in order to purchase that stock at artificially depressed prices. Both rely on nearly identical sets of facts, including nearly identical econometric analyses of trading data to support their manipulative act allegations (*compare* ¶¶ 36-47 *with* N¶¶ 61-74) and their scienter allegations (*compare* ¶¶ 99-116 *with* N¶¶ 266-287).

---

[1] Citations to Defendant's Memorandum of Law in Support of Defendant's Motion to Dismiss the Complaint for Failure to State a Claim (ECF 22) are set forth as "Def. Br." and citations to Defendant's reply brief (ECF 26) are set forth as "Reply Br." Citations to "¶__" are to paragraphs of the Complaint (ECF 1) (the "Complaint") and citations to "N¶__" are to paragraphs of the First Amended Complaint in *Northwest Biotherapeutics*, which is ECF 95 on that docket.

COHENMILSTEIN

Page 2

The motions to dismiss filed in both cases are nearly identical as well. Defendant UBS makes the same arguments regarding manipulative acts and scienter that the defendants in *Northwest Biotherapeutics* made, each of which was rejected by Magistrate Judge Stein in the R&R.

<u>First</u>, the R&R found that the *Northwest Biotherapeutics* complaint sufficiently pled the "manipulative act" element of a market manipulation claim. Specifically, the R&R held that the complaint "contains particularized factual allegations evincing all these indicia of spoofing" that courts have used to distinguish spoofing from legitimate market activity, *see* R&R p. 33, relying on the same "indicia of spoofing" present in the Complaint here: (1) the placement of Baiting Orders (*e.g.* ¶¶ 41, 43, 44, 106, 109, 110, 112, 113); (2) the cancellation of Baiting Orders (*e.g.* ¶¶ 45, 46, 108); (3) the brief time between placement and cancellation (*e.g.* ¶¶ 53, 60, 66, 73, 79, 86, 107); (4) "parking" (*e.g.* ¶ 105); and (5) conduct contrary to ordinary market making (*e.g.* ¶ 114).

The R&R then considered and persuasively rejected the same arguments raised by UBS – that (a) the complaint merely labels certain orders as "Baiting Orders," c*ompare* R&R p. 35-39 *with* Def. Br. at 6, 10, 13-14; (b) the defendant was engaged in "routine market activity," *compare* R&R p. 41-42 *with* Def. Br. at 11; and (c) the defendant could have been trading on behalf of clients, *compare* R&R p. 39-41 *with* Def. Br. at 11-13, Reply Br. at 1-4. Notably, with regard to the latter, the R&R expressly concluded that:

> NWBO need not allege that Baiting Orders were placed and cancelled by clients, let alone the same client, for its theory to survive. Such an allegation is not relevant to Plaintiff's theory of the case, which focuses on *Defendants'* control over the high-speed trading algorithms and *Defendants'* responsibility to monitor such algorithms.

R&R p. 40 (emphasis in original). In reaching this conclusion, the R&R pointed specifically to a paragraph in the complaint alleging that defendants' spoofing activity "may have been executed by Defendants for their own accounts … or for client accounts" – exactly the same language that UBS urges this Court to rely on in granting its motion. Def. Br. at 12 n.7, Reply Br. at 3.

In response to these well-reasoned and directly on-point conclusions, UBS replies only in footnotes that it believes the R&R (as well as the recent *Harrington* decisions) "should not be followed" because they are supposedly inconsistent with the Second Circuit's decision in *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) (Reply Br. at 2 n. 5; 7 n. 12) – notwithstanding that *ATSI* did not involve *any* factual allegations regarding the defendant broker-dealer's illegal conduct, and that a broker's liability for manipulative trading on behalf of client accounts finds ample support in Second Circuit precedent. *S.E.C. v. U.S. Environmental, Inc.*, 155 F.3d 107, 112 (2d Cir. 1998).

<u>Second</u>, the R&R found that the *Northwest Biotherapeutics* complaint sufficiently pled scienter under the "motive and opportunity" standard. Specifically, the R&R held that an alleged

COHENMILSTEIN

Page 3

spoofing scheme designed to take advantage of depressed prices "suffices to plead scienter under a motive-and-opportunity theory," rejecting the defendants' arguments that the complaint alleged only a *de minimus* amount of profit because "[w]hile profits from any single episode may be miniscule, spoofers can generate substantial returns by repeating the scheme thousands of times across the same and different issuers' securities." *Compare* R&R p. 54-56 *with* Def. Br. at 16-18, Reply Br. at 4-6.

UBS's only response to the R&R's comprehensive analysis of these motive allegations is to offer in a footnote that the calculations it makes in its motion to dismiss brief are based on different approaches than the calculations made by the *Northwest Biotherapeutics* defendants, but does not explain (because it cannot) why its bald factual calculations in this case should be given any more credence at the motion to dismiss stage than the ones rejected by the R&R. Reply Br. at 5 n.10.

Finally, the R&R found, consistent with numerous other spoofing cases, that the *Northwest Biotherapeutics* complaint sufficiently pled scienter under the "conscious misbehavior or recklessness" standard. *Compare* R&R at 59-64 *with* Def. Br. at 18-23, Reply Br. at 6-8. Among other things, the Court held the complaint's detailed allegations of the common "indicia" of spoofing, *see e.g., Harrington Global Opportunity Fund, Limited, v. CIBC World Markets Corp.*, No. 21-CV-761, 2023 WL 6316252, (S.D.N.Y. Sept. 28, 2023), at *6-7 ("*Harrington II*"), are sufficient to allege scienter. (R&R p.60.) The same allegations are made here, and Defendants ignore them all.[2]

---

[2] The R&R did find that the *Northwest Biotherapeutics* plaintiff failed to adequately allege loss causation, but held that leave to amend should be granted because it would not be futile. Notably, however, the loss causation allegations in this case differ from those in *Northwest Biotherapeutics* in ways that would survive even under the R&R's analysis. Specifically, the R&R stated that the complaint needed to provide additional detail in an amendment to "close the circle" regarding its allegations that the prices at which the plaintiff transacted in its own stock were "formulaically derived" from closing prices that were affected by defendants' spoofing. R&R p. 71. Here, Phunware's sales were not based on any "formulaically derived" transaction prices. Instead, the sales described in the Complaint were open-market transactions made after, and in close proximity to, UBS's spoofing, often within 5 minutes of Spoofing Episodes (*e.g.*, ¶ 118). Further, Phunware alleges facts to support its theory about the length of time that spoofing affected the market and the timing of any its trades in relation to the spoofs. *See, e.g.,* ¶ 119 (alleging "both a temporary and long term adverse effect on the market price of PHUN stock"), ¶ 120 (alleging the "impact of this spoofing activity extended beyond the specific spoofing cycle … because the market neither immediately nor fully rebounded from the manipulated prices once each of the Spoofing Episodes was completed."), ¶ 35 (citing expert analysis that manipulative trades can lead to permanent price impact).

Page 4

                    Respectfully submitted,

                    By: */s/ Laura H. Posner*
Laura H. Posner
Michael B. Eisenkraft
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, NY 10005
Tel: (212) 838-7797
Fax: (212) 838-7745

Raymond M. Sarola
**COHEN MILSTEIN SELLERS & TOLL PLLC**
Two Logan Square
100-120 N. 18th Street, Suite 1820
Philadelphia, PA 19103
Tel: (267) 479-5700
Fax: (267) 479-5701

*Counsel for Plaintiff*

cc: Counsel of record (via ECF)