UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PHUNWARE, INC., <br><br>       Plaintiff, <br><br>    v. <br><br> UBS SECURITIES LLC, <br><br>       Defendant. | 23 Civ. 6426 (DEH) <br><br> **OPINION** <br> **AND ORDER** |

DALE E. HO, United States District Judge:

  Plaintiff Phunware, Inc. brings this action for claims under Sections 9(a)(2) and 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and New York common law against Defendant UBS Securities LLC ("UBS"). Phunware alleged that UBS engaged in "spoofing" of Phunware's stock, a practice in which a market participant first places numerous false orders to artificially inflate or depress a security's price, then takes advantage of the impact to transact at the affected price, and finally cancels the initial false orders. On April 23, 2024, this Court issued an Opinion and Order concluding that Phunware had adequately alleged two elements of its securities fraud claims—a manipulative act and scienter—but not the third element—loss causation—and dismissed the Complaint. *See* Opinion and Order ("First MtD Order") at 13-16, ECF No. 30. Phunware subsequently moved to amend the Complaint, and in a Memorandum Order dated November, 26, 2024, the Court granted Phunware's motion. *See* Mem. Order ("MtA Order"), ECF No. 34. The parties' familiarity with this procedural history and the Court's prior orders is assumed.

  Now before the Court is UBS's motion to dismiss the First Amended Complaint ("FAC"), ECF No. 35. ECF No. 40. For the reasons stated below, UBS's motion is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

The basic facts underlying Phunware's allegations are set forth in the Court's First MtD Order; the Court recounts additional facts only as are necessary to resolve this motion. All facts recited below are taken from the FAC and are assumed to be true solely for purposes of adjudicating Defendant's motion. *See Buon v. Spindler*, 65 F.4th 64, 69 n.1 (2d Cir. 2023).

Two sets of allegations in the FAC are particularly relevant to this motion. First, Phunware alleges that, after a spoofing episode, the price of its stock would only partially rebound, resulting in "a long-term adverse effect on the market price of PHUN stock." FAC ¶¶ 120-21. To illustrate this, the FAC contains a chart that purports to show the average change in the price of Phunware stock over a 60-day period following a spoofing episode, and depicts a long-term gradual decline when compared to the Nasdaq Composite and NASDAQ-100 Technology indices. *See id.* ¶ 126. Like the original Complaint, the FAC also heavily cites an expert report by Professor Paul Milgrom in *Alaska Electrical Pension Fund v. Bank of America, N.A.*, No. 14 Civ. 7126 (S.D.N.Y. Nov. 13, 2018) (the "Milgrom Report"), concluding that manipulative trading can lead to a permanent price impact. *Id.* ¶ 128.

Second, the FAC also contains allegations about a particular alleged spoofing episode on February 11, 2021. During the final ten minutes of trading on that day, UBS placed orders to sell 107,712 shares worth more than $1.6 million, "more than 38 times the volume of attributed sell-side orders that it had placed throughout the entire rest of that trading day." *Id.* ¶ 154. These orders had the effect of "driving the price of PHUN shares downward by 1.7% over this ten-minute period, from a high of $2.87 to a low of $2.82 over this period." *Id.* ¶ 155. "During this period" of depressed prices, UBS then "executed Executing Purchases to buy a total of 4,014 shares, in three transactions of 3,414, 100 and 500 shares at 15:51:47.713, 15:56:17.667 and 15:56:20.163, respectively, at prices between $2.84 and $2.85 per share." *Id.* Then, "[w]ithin milliseconds after

the 4pm close of trading on February 11, 2021, [UBS] began to cancel the artificial supply injected by their Baiting Orders." *Id.* ¶ 156.

## LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).[1] "In assessing the complaint, [a court] must construe it liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor." *Id.* at 106-07. However, the court must disregard any "conclusory allegations, such as 'formulaic recitations of the elements of a cause of action.'" *Id.* at 107 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

A complaint alleging securities fraud must also satisfy heightened pleading requirements set forth in Rule 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 75 (2d Cir. 2021). Rule 9(b) requires that "a party . . . state with particularity the circumstances constituting fraud or mistake." The PSLRA "expanded on the Rule 9(b) standard." *Anschutz Corp. v. Merrill Lynch & Co., Inc.*, 690 F.3d 98, 108 (2d Cir. 2012). The PSLRA requires that a plaintiff "(1) specify each misleading statement, (2) set forth the facts on which a belief that a statement is misleading was formed, and (3) state with particularity facts giving rise to a strong inference that the defendant acted with scienter—the required state of mind." *Set Cap. LLC*, 996 F.3d at 75.

Section 10(b) of the Exchange Act prohibits the "use or employ[ment] in connection with the purchase or sale of any security . . . [of] any manipulative or deceptive device." 15 U.S.C.

---

[1] In all quotations from cases, the Court omits citations, footnotes, emphases, internal quotation marks, brackets, and ellipses, unless otherwise indicated. All references to Rules are to the Federal Rules of Civil Procedure.

§ 78j(b). To establish a claim under § 10(b), a plaintiff must plead "(1) manipulative acts; (2) damage; (3) caused by reliance on an assumption of an efficient market free of manipulation; (4) scienter; (5) in connection with the purchase or sale of securities; (6) furthered by the defendant's use of the mails or any facility of a national securities exchange." *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 106 (2d Cir. 2022).

Section 9(a)(2) of the Exchange Act prohibits "effect[ing] . . . a series of transactions in any security . . . creating actual or apparent active trading in such security, or raising or depressing the price of such security, for the purpose of inducing the purchase or sale of such security by others." 15 U.S.C. § 78i(a)(2). To state a claim under § 9(a)(2), a plaintiff must show "(1) a series of transactions in a security creating actual or apparent trading in that security or raising or depressing the price of that security, (2) carried out with scienter and (3) for the purpose of inducing the security's sale or purchase by others." *SEC v. Gallagher*, No. 21 Civ. 8739, 2023 WL 6276688, at *14 (S.D.N.Y. Sept. 26, 2023). Section 9(f), which creates a cause of action for violations of § 9(a), *see* 15 U.S.C. § 78i(f), also requires that "the price of the security that is purchased or sold be affected by the violation." *Xu v. Direxion Shares ETF Tr.*, No. 22 Civ. 5090, 2023 WL 5509151, at *6 (S.D.N.Y. Aug. 25, 2023). "The analysis of claims under [§] 9(a) closely parallels the analysis of claims under [§] 10(b)." *Stone Family Tr. V. Credit Suisse AG*, No. 19 Civ. 5192, 2022 WL 954743, at *6 (S.D.N.Y. Mar. 30, 2022); *accord Set Cap. LLC*, 996 F.3d at 82 (articulating the elements of claims under § 9(a) and § 10(b) as identical).

The elements of New York common law fraud are "a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages." *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 910 N.E.2d 976, 979 (N.Y. 2009). "[T]he elements of claims for federal securities fraud and New York common law fraud are nearly identical[.]" *Axar Master Fund, Ltd. V. Bedford*, 806 F. App'x 35, 38 n.2 (2d Cir. 2020); *accord*

4

*Anschutz Corp.*, 690 F.3d at 110 n. 15 (affirming dismissal of a common law fraud claim because it "suffer[ed] from the same deficiencies as [the] claims under § 10(b)").

Particularly relevant here, loss causation is a required element for each of Phunware's claims. *See Noto*, 35 F.4th at 102 (Section 10(b)), *Sharette v. Credit Suisse Int'l*, 127 F. Supp. 3d 60, 80 (S.D.N.Y. Aug. 20, 2015) (Section 9(a)), *Greentech Rsch. LLC v. Wissman*, 961 N.Y.S.2d 406, 407 (N.Y. App. Div. 2013) (New York common law).

## DISCUSSION

UBS raises three issues in its Motion to Dismiss the FAC. First, it seeks dismissal of any claims arising from a "long-term price impact theory," for failure to adequately allege the loss causation element of a securities fraud claim. Second, in the event the Court accepts Phunware's long-term price impact allegations, UBS seeks reconsideration of the Court's prior ruling holding that Phunware has plausibly alleged a manipulative scheme based on short-term price manipulations, as inconsistent with Phunware's long-term price impact theory. And third, UBS seeks dismissal of any claims related to an alleged spoofing episode occurring on February 11, 2021. The Court addresses each issue in turn.

### I.    Long-Term Price Impact

As the Court explained in its MtA Order, a plaintiff in a spoofing case can plead loss causation in two ways:

> under (1) a temporal proximity theory, where "its trades occurred so close in time to [Defendant's] spoofing as to permit [the court] to infer as a matter of common sense that the market prices were artificial when [Plaintiff] traded," or (2) a long-term price impact theory that the market price takes a protracted period of time to "return to a non-artificial level after a spoof" that justifies an inference of "price artificiality during the time in which plaintiff was trading."

MtA Order at 3 (quoting *Gamma Traders - I LLC v. Merrill Lynch Commodities, Inc.*, 41 F.4th 71, 80 (2d Cir. 2022)). In the MtA Order, the Court concluded that the FAC adequately alleges

loss causation under a temporal proximity theory. *See id.* at 3-6. But it did not reach the issue of whether the FAC sufficiently alleges a long-term price impact, deferring on that issue pending further motions practice, if any, from the parties. *See id.* at 6. UBS now moves to dismiss any claims arising from a long-term price impact theory for failure to adequately plead loss causation.

### A. Standard for Loss Causation

"Loss causation is the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005). "[T]o establish loss causation, a plaintiff must allege that the subject of the fraudulent statement or omission was the cause of the actual loss suffered, i.e., that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." *Id.* at 173 (cleaned up). Loss causation is adequately pled where a plaintiff alleges either "(a) . . . that the market reacted negatively to a corrective disclosure of the fraud; or (b) that that the loss was foreseeable and caused by the materialization of the risk concealed by the fraudulent statement." *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 232-33 (2d Cir. 2014). The Second Circuit has not decided whether Rule 9(b)'s heightened pleading standard applies to loss causation, *see Abramson. v. Newlink Genetics Corp.*, 965 F.3d 165, 179 n.65, but it has stated that "Plaintiffs' burden is not a heavy one. The complaint must simply give Defendants some indication of the actual loss suffered and of a plausible causal link between that loss and the alleged misrepresentations." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 187 (2d Cir. 2015) (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005)).

### B. Application

With respect to Phunware's long-term price impact theory, the FAC alleges that UBS's spoofing had a "persistent long-term negative impact on the price of PHUN shares," suggesting

6

that essentially all of Phunware's stock sales following the beginning of UBS's spoofing scheme were negatively impacted. FAC ¶ 126; *see also id.* ¶ 124-25. As the Court noted previously, "this theory of injury appears at odds" with Phunware's allegations of how UBS profited from its spoofing activity during the episodes (i.e., by executing sales once the price of Phunware stock rebounded after alleged spoofing episodes). First MtD Order at 14. But "[b]ecause no uncorrected falsehoods are alleged to have endured past the Spoofing Episodes themselves, [Phunware's] stock price could not, as alleged, have remained permanently distorted." *Nw. Biotherapeutics, Inc. v. Canaccord Genuity LLC*, No. 22 Civ. 10185, 2025 WL 934319, at *14 (S.D.N.Y. Mar. 26, 2025).

Phunware asserts that there is no contradiction between its allegations of a *partial* rebound in its share prices after spoofing activity (which enabled UBS to make short-term profits off of that activity), and a more generalized long-term overall decline. But Phunware's allegations with respect to such purported long-term effects—*see, e.g.* FAC ¶ 120 ("Defendant's manipulative spoofing had both an immediate and a long-term adverse effect on the market price of PHUN stock."); ¶ 121 ("The impact of Defendant's spoofing activity extended beyond the specific spoofing cycle (i.e., orders, trades, and cancellations) because the market neither immediately nor fully rebounded from the manipulated prices once each of the Spoofing Episodes was completed.")—are too conclusory to suffice on a motion to dismiss. *See Gamma Traders*, 41 F.4th at 80 (disregarding the statement that "Defendants' manipulation of the markets for precious metals futures contracts caused prices to be artificial throughout the Class Period" as conclusory). As for the 60-day chart purporting to show a decline in the price of Phunware stock relative to Nasdaq indexes after a spoofing episode, *see* FAC ¶ 126, "[t]he chart, which depicts nothing more than a price decline, . . . does not suffice to plausibly allege that Defendants' spoofing *caused* a [long-term] decline in the price of [Phunware's] stock." *Nw. Biotherapeutics, Inc.*, 2025 WL 934319, at *16 (emphasis added).

Finally, while the FAC (like the original complaint) relies heavily on the Milgrom Report, a court in this District recently held that the Milgrom Report is inapplicable to spoofing claim because it "does not mention spoofing or the spoofing literature," but rather "addresses a fundamentally different kind of market manipulation"—i.e., "a scheme among various banks to fix benchmark interest rates at levels that would maximize their profits." *Nw. Biotherapeutics, Inc.*, 2025 WL 934319, at *16 (internal quotations and citation omitted). *See also Nw. Biotherapeutics, Inc. v. Canaccord Genuity LLC*, No. 22 Civ. 10185, 2023 WL 9102400, at *31-32, 32 n.32 (S.D.N.Y. Dec. 29, 2023) (noting, among other things, that *Alaska Electrical Pension Fund* was an antitrust action and the tendency of some forms of anti-competitive market manipulation to affect prices does not support an inference of the same for spoofing).

The Court concludes that Phunware has failed to allege loss causation with respect to its claims under a long-term price impact theory under even the Rule 8(a)(2) standard.[2] Accordingly, any claims arising under such a theory are dismissed.[3]

## II.   Claims Arising from the February 11, 2021 Spoofing Episode

As noted, the Court previously held that Phunware adequately pled a claim based on a short-term temporal proximity theory of loss. *See generally* MtA Order. UBS, however, argues that any claims arising from a particular alleged spoofing episode on February 11, 2021 should be

---

[2] As noted, the Second Circuit has not decided whether Rule 9(b)'s heightened pleading standards applies to the element of loss causation. But it is unnecessary to resolve this question here, because Plaintiff's allegations fail even under Rule 8(a)(2)'s more forgiving standard, which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *See, e.g.*, *Gru v. Axsome Therapeutics, Inc.*, No. 22 Civ. 3925, 2023 WL 6214581, at *4 (S.D.N.Y. Sept. 25, 2023) (granting a motion to dismiss for failure to adequately plead loss causation under Rule 8(a)(2)'s standard).

[3] Because the Court rejects Phunware's claims under a long-term price impact theory, it does not consider UBS's argument that sustaining those claims would be inconsistent with the Court's prior holding that Phunware has adequately alleged a manipulative scheme based on immediate, short-term price fluctuations.

dismissed for failure to plausibly plead a manipulative act. *See* Mem. of L. in Supp. of Def's Mot. to Dismiss the FAC ("Def.'s Mem.") at 23-24, ECF No. 41. UBS argues that the "methodology" used by Phunware to identify the alleged baiting orders on that day is inadequately specified, and it notes that the alleged spoofing activity on this date is not included in Phunware's chart of spoofing activities during the relevant period. *See id.* UBS further notes that Phunware's allegations about spoofing on this day lack the same degree of specificity as its other allegations. *See id.*

But the Court concludes that the FAC's allegations as to alleged spoofing on February 11, 2001, when viewed in the light most favorable to the Plaintiff, are sufficient at this stage. Phunware's allegations here generally follow the same standard three-step spoofing pattern that this Court has found sufficient with respect to other alleged spoofing episodes: (1) a large volume of orders by UBS that were allegedly baiting orders, *see* FAC ¶ 154 (describing UBS orders to sell 107,712 shares worth more than $1.6 million during the final ten minutes of the trading day, "more than 38 times the volume of attributed sell-side orders that it had placed throughout the entire rest of that trading day"); (2) a subsequent period of decline in Phunware share prices, during which UBS executed other trades, *see* FAC ¶ 155 (alleging that UBS then "took advantage of this artificial downward pressure and executed Executing Purchases to buy a total of 4,014 shares"); and (3) cancellation of the initial baiting orders, *see* FAC ¶ 156 (alleging that, "[w]ithin milliseconds after the 4pm close of trading on February 11, 2021, Defendant began to cancel the artificial supply injected by the[] Baiting Orders"). This is sufficient to plead a manipulative act. *See* First MtD Order at 6-9.

UBS argues that this pattern is not similar to the spoofing instances that the Court previously held were adequately alleged, in several respects. First, it argues that the February 11 sell orders were not "baiting orders" at all, but rather simply a response to Phunware's

9

announcement earlier in the day regarding Phunware's registration of the offering and sale of up to $100,000,000 in Phunware shares—which would be dilutive and could depress its stock price. *See* Def.'s Mem. at 24. But this is a competing factual assertion as to the nature of UBS's February 11 sell orders that—in light of the facial adequacy of Phunware's allegations that these were in fact baiting orders—is not a basis on which to grant a motion to dismiss.

Second, UBS notes that the cancellation of the alleged baiting orders took place three minutes and 27 seconds after the closing of trading, and over eight minutes after the orders were placed, which UBS argues is too long of a period of time to support an allegation of spoofing. *See id.* at 24-25 (citing FAC ¶¶ 155-56). While this period is longer than the seconds-long (or even milliseconds-long) intervals that often characterize spoofing, the Court is unable to identity any authority (and UBS cites none) holding that it is too long to form the basis of a spoofing claim. *Cf. Nw. Biotherapeutics, Inc.*, 2025 WL 934319, at *8 (holding that the complaint "plausibly pleads that the effects of Defendants' spoofing activities on [Plaintiff's] stock price lasted at least one hour"). In any event, the FAC alleges, *see* FAC ¶ 156, that UBS placed its orders at the end of the trading day and then "began to cancel the artificial supply injected by [its] Baiting Orders" "[w]ithin milliseconds after the 4pm close of trading," which the Court concludes is sufficient at this stage of the litigation. "'The effects of spoofing pose questions of fact,' and a plaintiff at this stage is only required to 'allege some facts that support an inference of actual injury.'" MTA Order at 5 (quoting *Gamma Traders*, 41 F.4th at 80). Accordingly, UBS's motion to dismiss claims arising from alleged spoofing on February 11, 2021 is denied.

## CONCLUSION

For the reasons given above, Defendant's Motion to Dismiss the FAC is **GRANTED IN PART and DENIED IN PART**. Specifically, the Motion is granted as to any claims arising under a long-term price impact theory and denied in all other respects.

An order scheduling an Initial Pretrial Conference in this matter shall issue separately.

The Clerk of Court is respectfully directed to close the motion at ECF. No. 40.

SO ORDERED.

Dated: September 12, 2025
New York, New York

DALE E. HO
United States District Judge